**SO ORDERED.**

**SIGNED this 24 day of September, 2013.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **DOUGLAS BROCK BYERS** | **13-00089-8-SWH** |
| **DEBTOR** | |

**ORDER REGARDING MOTION TO DISMISS CASE**

The matter before the court is the motion filed by the bankruptcy administrator to dismiss this case pursuant to 11 U.S.C. §§ 707(b)(1) and 707(b)(3). A hearing took place in Raleigh, North Carolina, on August 8, 2013. For the reasons that follow, the motion to dismiss will be allowed pursuant to § 707(b)(1).

Background

Douglas Brock Byers filed a petition for relief under chapter 7 of the Bankruptcy Code on January 4, 2013. The debtor sells surgical products on an independent contractor basis, often in association with his father's business in the same field. His schedules state that he has secured debt in the amount of $634,150.02, priority unsecured debt in the amount of $17,000.00, and non-priority unsecured debt in the amount of $209,384.33. Of the $209,384.33 in non-priority unsecured debt, the debtor owes $82,412.89 to his parents individually, and $85,000.00 to Diagnostic Healthcare Systems, Inc., his father's company.

The debtor's Schedule A reflects that he owns real property in Wake Forest, North Carolina (the "Subject Property"), valued at $689,000.00 and subject to secured claims of $634,150.02. On his Statement of Intention, the debtor indicated that the property would be retained, that he intended to reaffirm the debt, and that the property would be claimed as exempt. The debtor's Schedule I estimates his average monthly income at $10,000.00, and states that he is an "independent sales rep with variable compensation." Schedule I, No. 17. His Schedule J indicates average monthly expenses of $9,990.60, $3,340.16 of which is allocated to the mortgage payment on the Subject Property. Schedule J further indicates that the "[r]esidence is on the market and may sell. If that occurs, expenses will change." Schedule J, No. 19. Part IV of the debtor's Form B22A, i.e., the "means test" reflects negative monthly disposable income in the amount of $1,262.37.[1]

The debtor testified that the Subject Property has been listed for sale since prior to the filing of the petition, first at a price in excess of the secured debt, based on his belief that the property had equity that could be used to repay debts. Since listing the Subject Property for sale, the debtor has lowered the price several times, yet still only received one offer, which he considered inadequate. The debtor further testified that he wanted to sell the property as quickly as possible, inasmuch as it was formerly shared with an ex-spouse. Additionally, the debtor testified that he is unable to make the payments on the mortgage. On January 14, 2013, the primary secured creditor, Fifth Third Mortgage Company, filed a motion for relief from stay as to the Subject Property, indicating that

---

[1] The purpose of Form B22A is to determine whether a presumption of abuse arises under § 707(b)(2). The Official Form shows the debtor's calculations as required by § 707(b)(2)(A), commonly referred to as the "means test." According to § 707(b)(2), if a debtor's means test shows an ability to repay some portion of his debts, then there is a presumption of abuse, and, absent special circumstances, the case must either be converted to chapter 13 or dismissed.

the debtor had been in default since November of 2012. The debtor did not file a response, and on February 7, 2013, the stay was lifted.

The bankruptcy administrator filed a Statement of Presumed Abuse on February 12, 2013, followed by the present motion to dismiss on March 13, 2013. The motion requests dismissal of the debtor's case for abuse pursuant to §§ 707(b)(1) and 707(b)(3) of the Bankruptcy Code. Although the bankruptcy administrator raises several issues with regard to the accuracy of the debtor's schedules, the primary basis for the motion is the debtor's deduction of his $3,340.16 mortgage payment on Line 42 of the means test. The bankruptcy administrator argues that this deduction was improper, given that the debtor intended to sell the property, had not made any payments since prior to filing the petition, and did not intend to make any payments in the future. According to the bankruptcy administrator, if the debtor had not deducted the mortgage payment when completing his means test, and instead had used the appropriate local standard amount, application of the test would result in sufficient disposable income to pay a portion of his unsecured debt and his case would therefore represent an abuse under § 707(b)(1). The bankruptcy administrator notes that the debtor testified at the § 341 meeting of creditors that he was unable to make the payments and intended to surrender the Subject Property,[2] further buttressing her position that his deduction of the significant mortgage expense improperly enabled him to pass the means test and obtain a chapter 7 discharge of his debts.

---

[2] See Mot. to Dismiss, pg. 3. Although not relevant to the outcome of this matter, the debtor testified that he did not recall the specific conversation he had with the trustee at the § 341 meeting. The bankruptcy administrator played a recorded segment of the § 341 meeting to refresh the debtor's recollection, in which the debtor stated that he was not going to keep the home, but did not use the term "surrender."

3

The debtor asserts that he intended to sell, rather than surrender the Subject Property. To this end, the debtor testified that he attempted to keep the payments current (at some point through help from his parents), and paid for various maintenance and repairs in order to maintain the property's appeal to potential buyers. The debtor therefore contends that he did not complete his schedules or means test in a dishonest manner, because attempting to sell property in order to fully satisfy a debt is not equivalent to surrendering property.

## Discussion

Section 707(b)(1) of the Bankruptcy Code provides that the court may dismiss an individual debtor's case, or convert the case to one under chapter 11 or 13 with the debtor's consent, "if it finds that the granting of relief would be an abuse of the provisions" of chapter 7. 11 U.S.C. § 707(b)(1). In determining whether abuse is present, § 707(b)(2) directs that the court shall presume abuse exists if a complex mathematical calculation (the means test) reflects sufficient disposable income to repay at least a portion of the debtor's debts.[3] See 11 U.S.C. § 707(b)(2). If the presumption does not arise or is rebutted, § 707(b)(3) provides that the court shall determine whether abuse is present by considering " . . . whether the debtor filed the petition in bad faith; or . . . the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3). The moving party, in this case the bankruptcy administrator, has the burden of proving abuse pursuant to § 707. In re Lipford, 397 B.R. 320,326 (Bankr. M.D.N.C. 2008); In re Leggett, 2011 WL 802806 *3 (Bankr. E.D.N.C. 2011).

---

[3] The presumption of abuse arises if the debtor's monthly disposable income over a 60-month period exceeds the lesser of (1) one quarter of the debtor's nonpriority unsecured debt or $7,025, whichever is greater; or (2) $11,725. See 11 U.S.C. § 707(b)(2)(A)(i)(I-II).

4

Based on the figures that the debtor used in completing his means test, namely, deducting $3,340.16 for his mortgage payment, the presumption of abuse did not arise under § 707(b)(2). However, the primary issue in this case is whether the debtor completed his means test properly. If the debtor had *not* deducted the $3,340.16 mortgage payment from his income, and instead had deducted the IRS Housing and Utilities Standard mortgage deduction in the amount of $1,391.00, the debtor's means test would have yielded $686.79 of monthly disposable income. As such, the debtor's 60-month disposable income would amount to $41,207.40, which is well in excess of the threshold amounts provided in § 707(b)(2)(A)(i)(I-II), such that the presumption of abuse would have arisen.[4] The question, therefore, is whether the debtor was entitled to take the $3,340.16 mortgage payment deduction when completing his means test, where he intended to sell the Subject Property and not to make any payments toward that debt.

At the outset, the court recognizes that the Statement of Intention form does not, on its face, offer the debtor choices applicable to his specific situation. As such, the debtor had to improvise. The debtor's filings do attempt to provide full disclosure, but they are contradictory. In Item 19 of Schedule J, which asks for a description of "any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document," the debtor states that the "[r]esidence is on the market and may sell. If that occurs, expenses will change." Schedule J, No. 19. On his Statement of Intention, where the debtor had to choose whether the Subject Property would be "surrendered" or "retained," he chose "retained." There is no option to "list for sale and not make payments." However, based on the two options provided, the "retain" option is the less

---

[4] The court will therefore decide this matter pursuant to a § 707(b)(1) and § 707(b)(2) analysis, which directs the court to presume abuse exists if the debtor "fails" the means test.

inaccurate of the two, if it had been properly qualified with an explanation of the debtor's true intent. The next part of the Statement of Intention provides: "[i]f retaining the property, I intend to (check at least one): redeem the property, reaffirm the debt, or other." Statement of Intention, Part A. The "other" option provides space for an explanation, along with the example of avoiding a lien pursuant to 11 U.S.C. § 522(f). Here, the debtor stated that he intended to reaffirm the debt. Not only does this statement conflict with debtor's Schedule J explanation, it is completely inconsistent with his testimony, during which he indicated that he did not intend to make any mortgage payments, and had always intended to sell the Subject Property.

Turning to the means test, Subpart C is entitled "[d]eductions for debt payment," and Line 42 directs the debtor to account for "[f]uture payments on secured claims." Form B22A, Subpart C. Line 42's description provides, "[f]or each of your debts that is secured by an interest in property that you own . . . state the Average Monthly Payment . . . [which] is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60." Form B22A, Line 42. Courts have grappled with the "scheduled as contractually due" language, which originates from § 707(b)(2)(A)(iii).[5] The consensus is that this language is ambiguous, as the word "scheduled" could connote a debtor's inclusion of debt payments on his bankruptcy schedules and statement of intention, such that the debtor intends to pay the debt going forward, or it could have a temporal connotation, referring to payments for which the debtor is contractually obligated as of the date of the petition. See e.g., In re Ray, 362 B.R. 680

---

[5] Section 707(b)(2)(A)(iii) provides, in pertinent part, "[t]he debtor's average monthly payments on account of secured debts shall be calculated as . . . the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition . . . divided by 60." 11 U.S.C. § 707(b)(2)(A)(iii).

(Bankr. D.S.C. 2007) (finding that a debtor's schedules form the basis of whether a debt is "scheduled as contractually due," and the determination must be made by employing a forward-looking approach); In re Walker, 2006 Bankr. LEXIS 845, *10-11 (Bankr. N.D. Ga. 2006) (holding that "Congress' choice of the phrase 'scheduled as contractually due,' suggests that, in determining which payments should be averaged for the deduction, the Court should determine how many payments are owed under the contract for each secured debt at the time of filing.")  Most frequently, the issue arises when a debtor intends to surrender property, yet takes the Line 42 deduction for the mortgage payment.  A split of authority has emerged among courts as to whether a deduction should be taken in the surrender scenario.  Shortly after the addition of the means test to the Bankruptcy Code in 2005,[6] the court in Lynch v. Haenke, 395 B.R. 346 (E.D.N.C. 2008), allowed a chapter 7 debtor to deduct her mortgage payment as an expense on her means test where she intended to surrender the property and make no payments on the debt.  The Haenke court interpreted the "scheduled as contractually due" language of § 707(b)(2)(A)(iii) to apply to payments the debtor was contractually obligated to make at the time of filing the petition.

More recently, however, in In re Quigley, 673 F.3d 269 (4th Cir. 2012), the Fourth Circuit interpreted § 707(b)(2)(A)(iii) in favor of the forward-looking approach.  The Quigley case involved a challenge to a chapter 13 debtor's plan, raising the ultimate question of whether the debtor could deduct payments for two vehicles in calculating her projected disposable income, where the debtor would be surrendering the vehicles and thus not making those payments.  The court noted that in determining the amount of a debtor's disposable income pursuant to § 1325(b), the debtor's

---

[6] The means test was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23, § 907 (April 20, 2005).

expenses are calculated by utilizing the means test of § 707(b)(2). See 11 U.S.C. 1325(b)(3). In order to determine whether the debtor's projected disposable income should account for changes that have occurred or will occur and are known at the time of confirmation, the Quigley court took guidance from the Supreme Court's decision in Hamilton v. Lanning, 130 S. Ct. 2464 (2010). Lanning dealt with a known impending change in a chapter 13 debtor's income. Rather than requiring the debtor to base her projected disposable income on only the previous six months, the Court employed a forward-looking approach, holding that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income *or expenses* that are known or virtually certain at the time of confirmation." Id. at 2478 (emphasis added.) The Quigley court further noted that the Supreme Court reached a similar decision in Ransom v. FIA Card Services, N.A., 131 S. Ct. 716 (2011), holding that in calculating monthly expenses, a chapter 13 debtor could not claim an allowance for car ownership costs, which was attributable to car loan or lease payments, if the debtor owned the car outright.

    In light of these Supreme Court decisions, the court in Quigley found that if the debtor was permitted to deduct vehicle payments that she would not be making when calculating her projected disposable income, the result would be senseless: unsecured creditors would be denied payments that the debtor clearly could make, based on her choice to surrender the vehicles. Quigley, 673 F.3d at 274. Following on this course, the District Court for the Eastern District of North Carolina recently decided In re Krawczyk, No. 5:12-CV-643-FL (E.D.N.C. June 17, 2013), holding that under § 707(b)(2)(A)(iii), a chapter 7 debtor may not deduct a mortgage payment as an expense where the debtor intends to surrender the collateral and never intends to make secured debt payments. The

court resolved the ambiguity of § 707(b)(2)(A)(iii) by applying Quigley, Lanning, and Ransom, observing with regard to Ransom in particular:

> Ransom confirmed that '[b]ecause Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category.' Likewise, '[r]equiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances BAPCPA's objectives.'

Id. at 9 (quoting Ransom, 130 S. Ct. at 725). The court in Krawczyk further confirmed that Quigley, Lanning, and Ransom, which were all decided in the context of chapter 13 proceedings, are instructive when applying the means test in chapter 7 proceedings because § 1325(b)(3) incorporates the chapter 7 means test by reference. Id. The court further held that

> even though the Fourth Circuit [in Quigley] applied § 707(b)(2)(A)(iii) in the context of a Chapter 13 proceeding, the language of the provision is the same in a Chapter 7 proceeding, and should thus be applied in the same manner. Similarly, the principles announced in Lanning and Ransom for application of the means test apply equally in Chapter 13 and Chapter 7 cases because the language of the means test is identical in each.

Id. at 10. This court therefore views Quigley, Lanning, Ransom, and Krawczyk as instructive in the present matter, which involves a similar factual premise.

In the case at hand, the debtor's means test calculation includes a deduction from income for the debtor's average monthly mortgage payment of $3,340.16 (consisting of a $2,831.00 payment to Fifth Third Bank and a $509.16 payment to Capital Bank). The problem with this approach is twofold: (1) the debtor had no intention of keeping the Subject Property, and in fact sought to sell it as quickly as possible, and (2) the debtor had been in default on payments since prior to filing the petition, did not make any payments after filing the petition, and never intended to make any further

payments.[7] The facts of this case are akin to cases in which a debtor intends to surrender collateral, and thus is not making payments toward the debt. In fact, what ultimately will happen in this case is effectively a delayed surrender. The debtor did not accept the initial offer(s) received on the Subject Property and as of the August 8, 2013 hearing, no further offers had been submitted – instead, Fifth Third Bank obtained relief from the stay on February 7, 2013, and the debtor testified during the hearing that a foreclosure auction would be held in two weeks. Although the debtor did incur expenses while maintaining the property in hopes that it would sell, the debtor had been in default on monthly payments since prior to filing the petition. The debtor had no intention of making any further payments, stating that he lacked the means to do so and that his parents were no longer willing to make the payments for him.

Just as the Fourth Circuit in Quigley did not permit the deduction of a secured debt payment pursuant to § 707(b)(2)(A)(iii) where the debtor intended to surrender the collateral, even though the payments were contractually due, this court will not permit a similar deduction in this case, based on common key facts: the debtor sought a deduction for payments that he did not intend to make, as to collateral that he did not intend to retain. By taking the mortgage payment deduction, the debtor's means test yielded negative monthly disposable income, yet, based on the sizeable amount of the mortgage payment that he was not making, the debtor actually had at least $686.79 of monthly disposable income available to repay debt. Over 60 months, if this amount of disposable

---

[7] As to when the last payment was made toward the respective mortgages, the evidence is somewhat unclear. The debtor testified that he made the payments until approximately August 2012, following which his parents made the payments for approximately 5-6 months, until approximately January of 2013. Fifth Third's motion for relief from stay, however, stated that the debtor had been in default since the due date of the November 2012 payment. The debtor did not refute this claim. The court must therefore deduce that the debtor was in default prior to filing the petition.

income were applied toward the repayment of debt, the debtor would be able to pay creditors $41,207.40 – which is not an insignificant amount. Incidentally, this would amount to almost a 100% repayment of non-insider unsecured debt.

Based on the foregoing, the court finds that in deducting the $3,340.16 mortgage payment, as opposed to the IRS Housing and Utilities Standard mortgage deduction in the amount of $1,391.00, the debtor completed his means test improperly. With the substitution of the standard deduction for the actual mortgage payment amount, the debtor has $686.79 in monthly disposable income and "fails" the means test of § 707(b)(2), causing the presumption of abuse to arise. The debtor has not presented any evidence of special circumstances in order to rebut the presumption pursuant to § 707(b)(2)(B)(i).

Accordingly, the motion to dismiss is **ALLOWED**.[8] The debtor shall have 20 days from the entry of this order to convert the case to a case under chapter 13. Should the debtor fail to convert this case within 20 days, the case is **DISMISSED** pursuant to § 707(b)(1).

**SO ORDERED**.

**END OF DOCUMENT**

---

[8] The bankruptcy administrator also brought the motion under § 707(b)(3), however, in light of the court's conclusion that dismissal is warranted under § 707(b)(1), it is not necessary to conduct additional analysis under § 707(b)(3).